632 A.2d 913

**PHAR-MOR, INC., An Ohio Corporation, Appellant,**

**v.**

**UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 1776 AFL–CIO, CLC and all Members Acting in Concert Within and Agents Thereof, Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1993.

Filed Oct. 29, 1993.

394

David B. Rodes, Pittsburgh, for appellant.

Wayne Wynn, Philadelphia, for appellees.

Before OLSZEWSKI, JOHNSON and HUDOCK, JJ.

OLSZEWSKI, Judge:

Phar–Mor, Inc. ["Phar–Mor"] appeals from the order of the Court of Common Pleas of Philadelphia County denying its petition for a preliminary injunction. We affirm.

The undisputed facts follow. From July, 1990 through November, 1990, United Food and Commercial Workers Union Local 1776 ["Local 1776"] conducted a campaign to organize workers at Phar–Mor stores, including appellant's stores at Franklin Mills Mall and Great Northeast Plaza ["the Stores"]. Local 1776 representatives repeatedly entered the Stores to distribute union literature and converse with Phar–Mor employees in an attempt to persuade them to adopt Local 1776 as their collective bargaining representative. Union literature was often left scattered around the Stores. Local 1776 representatives did not threaten or carry out injury to persons or damage to property. Entrances and exits to the Stores were in no way obstructed. Phar–Mor repeatedly requested Local 1776 representatives to leave the Stores on the grounds that their activities violated Phar–Mor's clearly posted "no solicitation/no distribution" policy.[1] Verbal exchanges occurred between Phar–Mor managers and Local

---

1. Phar–Mor had posted signs which read, "Solicitation and/or Distribution of Literature On Company Premises By Anyone Not Employed By Phar–Mor Is Strictly Prohibited."

1776 representatives. When Local 1776 activities continued, Phar–Mor called the local police in an attempt to prevent Local 1776 from entering the Stores. The police department told Phar–Mor that it would not act without a court order. Phar–Mor then filed a petition for a preliminary injunction to enjoin Local 1776 from distributing pro-union literature and soliciting Phar–Mor employees in the Stores. Phar–Mor claimed that Local 1776's activities amounted to harassment and were causing a loss of customer good will.

The matter was scheduled for a hearing on November 29, 1990, before the Honorable Calvin T. Wilson. Prior to the hearing, Judge Wilson held a conference to encourage Phar–Mor and Local 1776 to reach a voluntary settlement, but none was reached. The parties, however, did agree to waive an evidentiary hearing and submit the dispute to the trial court on the basis of the alleged facts. Local 1776 accepted as true all of the facts averred in Phar–Mor's complaint for purposes of the preliminary injunction issue. Nevertheless, Local 1776 filed preliminary objections to the requested injunctive relief on the grounds that Local 1776 used exclusively peaceful means to educate Phar–Mor employees about the benefits of union membership, and therefore, granting the injunction would contravene the Pennsylvania Labor Anti–Injunction Act, 43 P.S. § 206a et seq. [the "Act"]. Furthermore, Phar–Mor had filed unfair labor practice charges with the National Labor Relations Board regarding Local 1776's conduct. Local 1776 argued that the court must defer to the board's judgment since it has exclusive jurisdiction over alleged unfair labor practices. Judge Wilson granted Local 1776's preliminary objections and dismissed Phar–Mor's petition for preliminary injunction. This appeal followed.

The standard of review of an order denying or granting a preliminary injunction is well-established. The focus of this Court's review is to examine the record to determine if reasonable grounds existed for the court's action below. *Coatesville Development Company v. United Food Workers,* 374 Pa.Super. 330, 337, 542 A.2d 1380, 1384 (1988) (en banc). A preliminary injunction is an extraordinary remedy and in

order to sustain a preliminary injunction, it must be shown that the plaintiff has established a clear right to relief sought. *Soja v. Factoryville Sportsmen's Club,* 361 Pa.Super. 473, 479, 522 A.2d 1129, 1131 (1987). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was misapplied will we interfere with the decision of the chancellor." *Coatesville Development Company v. United Food Workers,* 374 Pa.Super. at 337, 542 A.2d at 1384 (citations omitted).

*PHK–P, Inc. v. Local 23,* 381 Pa.Super. 544, 547, 554 A.2d 519, 520 (1989).

Initially, we note that the present situation falls within the definition of a "labor dispute" under the Act.

The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employees are on strike with the employer.

43 P.S. § 206c.

An equity court has jurisdiction to grant relief in cases growing out of a labor dispute only where:

(1) unlawful acts have been threatened or committed or will be committed, (2) the employer's property will sustain substantial and irreparable injury, (3) greater injury will be inflicted upon the employer by the denial of relief than will be inflicted upon labor by granting relief, (4) adequate police protection is unavailable, and (5) there exists no adequate remedy at law.

*PHK–P, Inc. v. Local 23, supra,* at 550, 554 A.2d at 522; 43 P.S. § 206i(a), (b), (c), (f), and (e). All prerequisites must be met before a court may grant injunctive relief. *Giant Eagle*

*Markets Co. v. Local Union No. 23,* 425 Pa.Super. 186, 624 A.2d 208 (1993).

## I. UNLAWFUL ACTS

■ We find that all the prerequisites for granting injunctive relief have not been met. No unlawful acts have been committed and no threats of unlawful activity have been made. Local 1776 did not obstruct entrances or exits to the Stores and people or property were never at risk of injury. Local 1776 members entered the Phar–Mor Stores, passed out literature and conversed with employees about the benefits of union membership. We are satisfied that the mere scattering of union literature around the Stores and the occurrence of verbal exchanges between Phar–Mor managers and Local 1776 representatives does not constitute unlawful activity for purposes of satisfying 43 P.S. § 206i(a).

■ We also reject Phar–Mor's contention that Local 1776's disregard for Phar–Mor's posted "no solicitation/no distribution" policy constitutes an unlawful act of criminal trespass for purposes of fulfilling the statutory prerequisite.[2] The Stores were open to the public and Local 1776 created no breach of the peace upon entering. With the exception of the few moments when Local 1776 representatives would engage an employee in conversation, Phar–Mor's ability to transact business was in no way affected. We will not allow Phar–Mor to

---

**2.** The statute defining criminal trespass, 18 Pa.C.S.A. § 3503, provides in pertinent part:

**(b) Defiant trespasser.—**

(1) A person commits an offense if, knowing he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; ...

＊ ＊ ＊ ＊ ＊ ＊

**(c) Defenses.—**It is a defense to prosecution under this section that:

＊ ＊ ＊ ＊ ＊ ＊

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; ...

18 Pa.S.C.A. §§ 3503(b)(1)(i) & (ii), 3503(c)(2).

circumvent the Act by alleging "trespass" when Local 1776 acted peacefully, without threat or injury to people or property, and with the purpose of educating and informing employees about Union membership.

## II. SUBSTANTIAL AND IRREPARABLE INJURY

■  Case law makes it clear that the Act divests our state courts of jurisdiction to grant injunctive relief except in cases where violence or threat of harm to people or property is imminent.  In fact, this Court has held that the Act precludes the granting of injunctive relief in situations where property damage, interference with employer's business, and the potential for violence were much greater than in the instant case. For example, in *Giant Eagle Markets Co. v. Local Union No. 23, supra,* a supermarket owner sought injunctive relief against informational union picketers who broke a delivery van's windshield, flattened a truck's tires, made a bomb threat, and placed rodent traps in the store's aisles.  We held that the Act divested the trial court of jurisdiction to grant injunctive relief since the evidence was insufficient to establish substantial injury to the employer's property and there was no evidence that police could not adequately control the situation. *Id.* at 197, 624 A.2d at 214.  Similarly, in *Indiana Cobra v. Local No. 23,* 406 Pa.Super. 342, 594 A.2d 368 (1991), *alloc. denied,* 530 Pa. 655, 608 A.2d 30 (1992), this Court held that picketers who formed a human wall, forcing store customers to enter the premises by pushing their way through the wall was insufficient to grant injunctive relief under the Act.

■  In this case, Phar–Mor claims that it suffered substantial and irreparable injury due to the scattering of Union literature around the Stores and the disruption of business occasioned by harassment by Local 1776 representatives.  The scattering of Union literature around the Stores, at most, constitutes an inconvenient litter problem for Phar–Mor and does not rise to the level of a substantial and irreparable injury.  As to Phar–Mor's allegations of "harassment," the trial court stated, "testimony tended to show that employees and customers have been free to enter and exit plaintiff's

premises without threats of coercion or intimidation, and sales have been transacted without interruption." Trial court opinion at 7. Under these circumstances, Phar–Mor has failed to show how it will incur substantial and irreparable injury unless injunctive relief is granted.

## III. BALANCE OF INJURIES

■ Phar–Mor has also failed to show, pursuant to 43 P.S. § 206i(c), how greater injury will be inflicted on it by the denial of relief than will be inflicted upon Local 1776 by the granting of relief. A denial of injunctive relief would require that Phar–Mor suffer the inconveniences occasioned by solicitation and distribution of literature within the Stores by Local 1776. Enjoining Local 1776's activities in this case would prejudice its right under the Act to engage in collective action to protect and further employee economic interests. 43 P.S. § 206b. Thus, the harm Phar–Mor will suffer by the denial of injunctive relief does not outweigh the harm that will result if Local 1776 is precluded from peacefully dispensing union information to Phar–Mor employees.

## IV. INADEQUATE POLICE PROTECTION

■ Phar–Mor's claim that the local police's refusal to prevent Local 1776 from "trespassing" on Phar–Mor's premises without a court order is evidence that the police were unable to provide adequate protection for purposes of fulfilling 43 P.S. § 206i(f) is meritless. This Court has held that police refusal to take action without a court injunction does not constitute evidence that they were unable to furnish adequate protection. *Giant Eagle Markets Co., supra; see Solvent Machinery and Filter Systems, Inc. v. Teamsters Local No. 115,* 343 Pa.Super. 505, 495 A.2d 579 (1985) (trial court lacked statutory basis to issue injunction where no evidence was offered to support proposition that events taking place were of such magnitude that local police could not handle situation). There is no evidence that the local police were unable to stop Local 1776 activity in the Stores. The police department's refusal to act without a court order only indicates that it did

not believe that intermittent conversation with employees and the scattering of literature around the Stores constituted unlawful behavior. Moreover, even if it was demonstrated that the police were unable to provide adequate protection, the Act would still divest jurisdiction to grant injunctive relief because all of the prerequisites of § 206i have not been satisfied. *Giant Eagle Markets Co., supra.*

## V. AVAILABILITY OF LEGAL REMEDY

■ Phar–Mor also fails to fulfill a fifth statutory prerequisite for an injunction—the absence of a remedy at law. 43 P.S. § 206i(e). The chancellor found that Phar–Mor has an adequate remedy at law since it has filed a complaint with the National Labor Relations Board alleging unfair labor practices. We agree. Phar–Mor's complaint alleges that Local 1776 violated § 7 of the National Labor Relations Act by restraining and coercing Phar–Mor employees. "[I]t is settled that where there is an arguable violation of § 7 or § 8 of the federal act, state courts and labor boards, and indeed federal courts also must defer to the exclusive jurisdiction of the N.L.R.B." *Kerr v. Butler Building Trades Council, AFL–CIO*, 447 Pa. 247, 252–53, 288 A.2d 525, 527 (1972).

■ Finally, the injunctive relief requested by Phar–Mor is specifically prohibited by 43 P.S. § 206f and, therefore, is not a type of relief available under 43 P.S. § 206i(d).

No court of this Commonwealth shall have jurisdiction or power in any case involving or growing out of a labor dispute to issue any restraining order or temporary or permanent injunction which, ... restrains or prohibits any person, association or corporation from doing ... any of the following acts:

\* \* \* \* \* \*

(f) Organizing themselves, forming, joining or assisting in labor organizations bargaining collectively with an employer by representatives freely chosen and controlled by themselves, or for the purpose of collective bargaining or other

mutual aid or protection, or engaging in any concerted activities.

(g) Persuading by lawful means other persons to cease patronizing or contracting with or employing or leaving the employ of any person or persons.

*   *   *   *   *   *

(j) Assembling peaceably to do, or to organize to do, any of the acts heretofore specified, or to promote their lawful interests.

(k) Advising or notifying any person or persons of an intention to do or not to do any of the acts heretofore specified.

(*l*) Agreeing with other persons to do or not to do any of the acts heretofore specified.

(m) Advising, urging or otherwise causing or inducing, without misrepresentation, fraud or violence, others to do or not to do the acts heretofore specified; and

(n) Doing in concert with others any or all of the acts heretofore specified: Provided, That the specific enumeration in this section of acts which may not be restrained or enjoined shall not be construed to authorize the injunction or restraint of any act or acts not heretofore enjoinable or restrainable.

43 P.S. § 206f. Local 1776 used peaceful, non-destructive means to inform Phar–Mor employees and try to persuade them to join Local 1776's union. The Act specifically prohibits the restraint of Local 1776's activities in this case.

Under the Act, the trial court had no jurisdiction to grant injunctive relief. The chancellor, therefore, did not err in dismissing Phar–Mor's petition for a preliminary injunction.

Order affirmed.